IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAIMA HAROON, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 24-2725 |
| ERBE USA INCORPORATED, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND OPINION**

Saima Haroon sues her former employee, Erbe USA Inc., for breach of contract, fraudulent inducement, and promissory estoppel. (Docket Entry No. 23). Erbe moved to dismiss the first amended complaint, and Haroon moved to strike Erbe's motion. (Docket Entry Nos. 24, 25). Haroon's motion to strike Erbe's motion to dismiss was denied. (Docket Entry No. 29). The court considers Erbe's motion to dismiss Haroon's first amended complaint.

Based on the pleading, briefing, oral argument, and applicable law, Erbe's motion to dismiss is granted in part and denied in part. Haroon's breach of contract claim is dismissed, with prejudice because further amendment would be futile. The fraudulent inducement and promissory estoppel claims may proceed. Erbe's motion for leave to file a Rule 12(f) motion is granted. The reasons for these rulings are set out below.

**I.    Background**

Erbe's Sales Director, Duke Nguyen, recruited Saima Haroon to work at Erbe. (Docket Entry No. 23 at ¶ 9). Haroon alleges that during a telephone conversation in December 2022, Nguyen offered Haroon "a full undivided sales position whereby her commissions were set at 10%

for hardware/capital equipment and 7% commission for disposable sales beginning in January 2023." (*Id.* at ¶ 10). Haroon alleges that Nguyen informed her that she would receive "a non-finalized written compensation package offer," and explained that "he himself had the capacity to ensure [she] was paid in accordance with his verbal offer notwithstanding the tentative compensation terms contained in the written offer." (*Id.* at ¶ 11). Haroon also alleges that Nguyen told her that she "would have complete transparency via CRM technology as to how or whether she was paid consistently with these terms." (*Id.* at ¶ 12). Neither the complaint, nor Haroon's response to the motion to dismiss, explain what "complete transparency via CRM technology" means. Haroon alleges that she "verbally accepted these terms and resigned from her prior employer." (*Id.*).

Haroon signed both a written offer letter and a written employment agreement on December 30, 2022. (*Id.* at ¶¶ 13, 20); (Docket Entry No. 24-1). The written letter offered Haroon the position of Sales Representative at Erbe, reporting to Nguyen. (Docket Entry No. 24-1 at 2). The start date was January 9, 2023, and Haroon's "employment [was] at-will." (*Id.*). By signing the offer letter, Haroon "acknowledge[d] that no other representations [had] been made concerning [Erbe's] offer." (*Id.*).

Attached to the offer letter was an Employee Compensation Package, also signed by Haroon, that stated: "Your 2023 quota and compensation plan will be finalized by the end of this month. The current compensation plan as well as compensation estimate is attached to this offer package." (*Id.* at 3). The attached Sales Compensation Plan set out commission rates of 4% for disposable product, 7% for reusable product, and 10% for "**new** contracts / extended warranties ONLY." (*Id.* at 5). The effective date listed on the Sales Compensation Plan was September 29, 2022. (*Id.*). One of the terms of the Sales Compensation Plan was that the employee

2

"acknowledges and agrees that [Erbe] has not and does not make any representation or warranty as to the amount of commission that Employee may earn, and [Erbe] may revise the foregoing commissions schedule at any time and at its sole discretion." (*Id.*).

The day before signing the written offer letter and written employment contract, Haroon had a conversation with Nguyen about the terms. (Docket Entry No. 23 at ¶ 13). She alleges that Nguyen "assured that her commission was set at the new contract rate of 10% for capital equipment, although the written contract only mentioned an older compensation plan and new contract rates but had no reference to the capital equipment terminology." (*Id.*). She also alleges that Nguyen told her that "the 7% rate for disposable commission was still valid" and that he could "correct any commission discrepancy" to ensure she was paid that rate, even retroactively. (*Id.* at ¶ 14). Haroon alleges that she "found support" for these representations based on contract language stating that "the terms could be revised at the Company's discretion as well as the fact that certain of the terms were to be finalized at a later time, and prior to her work in the territory." (*Id.* at ¶ 15). Haroon also alleges that she believed that Nguyen's oral representations were consistent with the written offer and contract. (*Id.* at ¶ 16).

Haroon started working at Erbe in January 2023. (Docket Entry No. 23 at ¶¶ 19–20). She alleges that she learned in May 2024 that her compensation rates were set at 7% (rather than 10%) for capital and 4% (rather than 7%) for disposable products. (*Id.* at ¶ 32). She also learned "that the 'CRM' modules never provided the transparency that was promised." (*Id.* at ¶ 30). Haroon alleges that she "was constructively discharged/forced to resign in June 2024 for no legitimate reason." (*Id.* at ¶ 40).[1]

---

[1] The complaint includes lengthy allegations regarding discriminatory conduct. Because none of those allegations are relevant to Haroon's causes of action, the court does not recount them here.

3

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'"  *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

"[A]ll averments of fraud, whether they are part of a claim of fraud or not," are subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b).  *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).  Rule 9(b) provides that, "[i]n alleging

4

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation and quoting reference omitted).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (the court deciding a motion to dismiss could consider a contract referred to in the complaint, central to the plaintiffs' claims, and attached to the defendants' motion).

### III. Analysis

#### A. The Breach of Contract Claim

In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, no pet). Although Haroon has amended her complaint, she still has not identified what contract was allegedly breached. *See*

5

(Docket Entry No. 23 at ¶¶ 49–50) (stating that Haroon "fully performed under the contracts" and Erbe "materially breached the contact [*sic*] by failing to honor the promised compensatory terms and CRM transparency," without specifying the contract or the terms allegedly breached).

Haroon alleges that she executed a written contract with Erbe before beginning her employment in January 2023. (*Id.* at ¶ 13, 20). The complaint requested that Erbe "upload" the written contract because "it has protections that prohibit the uploading" by Haroon. (*Id.* at ¶ 29 n.1). Erbe attached to its motion to dismiss the offer letter and employment agreement that Haroon signed on December 30, 2022. (Docket Entry No. 24-1). Haroon does not dispute that this is the written contract referred to in her complaint, *see, e.g.*, (Docket Entry No. 23 at ¶¶ 13–14, 20, 29, 49–50), which is central to her breach of contract claim. Nor does she object to the court's consideration of the offer letter and employment contract that Erbe submitted. *See generally* (Docket Entry No. 26). The court properly considers the offer letter and employment contract, (Docket Entry No. 24-1), in deciding the motion to dismiss. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

If Haroon relies on the written contract as the basis for her breach of contract claim, the claim fails because she has not alleged a breach of the written terms. The complaint alleges two breaches: Erbe's failure "to honor [1] the promised compensatory terms and [2] CRM transparency." (Docket Entry No. 23 at ¶ 50). The compensation that Haroon received matches the terms of the Sales Compensation Plan, which she signed. *Compare* (*id.* at ¶ 32) *with* (Docket Entry No. 24-1 at 5). She has not alleged that the commission rates she received for any category of project were different than those included in the Sales Compensation Plan.[2] Neither the offer

---

[2] The response states: "Defendant ignored the allegation that Nguyen explained that, once finalized, the 10% new contract rate related to capital equipment, id [Doc. 23 at 2-6], and said rate was in the written

letter nor the employment contract mention "CRM transparency" or "CRM technology," so a failure to provide "CRM transparency" did not breach the written agreement. *See generally* (Docket Entry No. 24-1).

Haroon's breach of contract claim therefore turns on whether Nguyen's representations were part of a contract between Erbe and Haroon. But under Texas law, "[w]hen parties have a valid, integrated written agreement, the parol-evidence rule precludes enforcement of prior or contemporaneous agreements." *First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017) (quotation marks and quoting reference omitted). "As a result, extrinsic evidence cannot alter the meaning of an unambiguous contract." *Id.* (quotation marks and quoting reference omitted). By signing the offer letter, Haroon acknowledged that "no other representations have been made concerning [Erbe's] offer." (Docket Entry No. 24-1 at 2). Under the parol-evidence rule, Nguyen's alleged promises made before December 30, 2022, do not alter the terms of the offer letter and employment agreement, including the Sales Compensation Plan.

At the hearing, the court sought clarification as to which contract Haroon was alleging that Erbe breached. The following exchange occurred:

> The Court: [W]hat contract are you alleging was breached?
>
> Plaintiff's Counsel: The contract -- the verbal contracts that were based on the representations made prior to her start date as well as the contracts made -- reiterated after she executed a written contract.

---

contract (Def Ex. at 5)." (Docket Entry No. 26 at 4). A citation to four pages of the complaint does not aid this court in identifying what allegation Erbe purportedly ignored. The complaint alleges that Nguyen assured Haroon "that her commission was set at the new contract rate of 10% for capital equipment" and "[i]instead she had been paid only 7% for capital and not based on any new contract or 10% rate." (Docket Entry No. 23 at ¶¶ 13, 32). The court cannot identify—nor does the response point to—any allegation that Haroon was not paid a 10% commission rate for new contracts or extended warranties. Because the written contract does not specify a special commission rate for capital projects, Erbe's alleged failure to pay a 10% commission rate for capital projects does not violate the written terms.

7

> . . .
>
> The Court: So are you alleging that the oral representations modified the written contract or were incorporated into the written contract or that there were oral contracts that are different from the written contract?
>
> Plaintiff's Counsel: No. We're alleging that the written contracts were incomplete and that they contained a clause in there that says your quota and compensation plan will be finalized by the end of the month.
>
> The Court: But that argument then means that there was no enforceable written contract because it was incomplete in material ways.
>
> Plaintiff's Counsel: Perhaps.

Tr. at 4–5.

If—as the plaintiff's counsel argued at the hearing—the offer letter and employment agreement left some material terms open, then those written contracts cannot be the basis for Haroon's breach of contract claim. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("To be enforceable, a contract must address all of its essential and material terms with a reasonable degree of certainty and definiteness." (quotation marks and quoting reference omitted)). But here, the written contracts resolved all material matters related to compensation: the "current compensation plan" was provided, and the contract gave Erbe "sole discretion" to modify it—including to "finalize[]" Haroon's compensation plan by the end of the month. (Docket Entry No. 24-1 at 3, 5). This is not an unenforceable "agreement to agree." *See W. Power, Inc. v. TransAmerican Power Prods., Inc.*, 316 F. Supp. 3d 979, 991 (S.D. Tex. 2018) ("An agreement to agree is enforceable when it contains the material terms of the future contract such that the court can determine and enforce the parties' obligations."). By signing the offer letter and employment agreement, Haroon became an at-will employee obligated to accept the commission rates as finalized by Erbe, in Erbe's sole discretion, or quit.

8

Even if the written contract was not final, Haroon has not sufficiently alleged any enforceable contract that incorporated Nguyen's representations. The following elements must be present for an oral or written contract to be binding: "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 567 (S.D. Tex. 2016) (quoting reference omitted). "It is not enough that one party thinks there was a contract; they must show that their intentions to contract were expressed in a manner that the court is capable of understanding." *Id.* (quoting reference omitted). To survive a motion to dismiss, "the complaint must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim." *Am. Realty Tr., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005).

Haroon's complaint identifies several representations made by Nguyen before Haroon signed the written contract. Regardless of whether those representations are consistent or inconsistent with the written contract, the written terms state that the parties did not intend oral representations to form part of their contract. *See* (Docket Entry No. 24-1 at 2) ("[N]o other representations have been made concerning [Erbe's] offer."). The Sales Compensation Plan gives Erbe "sole discretion" to set the commission rates. (*Id.* at 5). These facts suggest that, even if Haroon understood Nguyen's promises to form part of her employment contract, Erbe did not intend to be bound by Nguyen's oral promises. The allegations do not support an inference that there was a meeting of the minds as to any terms outside of the written documents. Nor does Haroon identify how her allegations establish any of the other elements required to form an oral contract.

9

Haroon has also failed to allege a valid and enforceable contract based on representations made after the written contracts were executed. The complaint alleges that, after Haroon started work at Erbe, Nguyen continued to promise her that she would receive higher commission rates than those in the written contract. *See, e.g.*, (Docket Entry No. 23 at ¶ 20). Haroon correctly argues that, because those representations were made after the written agreement, they are not barred by the parol-evidence rule. *See First Bank*, 519 S.W.3d at 109 (the parol-evidence rule "precludes enforcement of prior or contemporaneous agreements"). But oral representations made after a written contract still must form part of an agreement that meets all the elements of a valid and enforceable contract in order to be enforceable. *See Gallier*, 171 F. Supp. 3d at 567. Again, Haroon has not alleged facts supporting the requisite elements. To the contrary, the written contract gave sole discretion to Erbe to set commission rates and disclaimed reliance on any other representations, and Erbe paid Haroon rates that were below what Nguyen promised. Those facts suggest that the parties did not mutually intend for Nguyen's oral promises—whether made before or after execution of the written contract—to form part of Haroon's employment contract.

Finally, Haroon has not alleged that the written contract was modified. She contends that Nguyen "represented that he had the capacity to modify the agreement in accordance with the verbal terms (*even if retroactively*)[], which is clearly not inconsistent with any provision given the written contract contemplates modification." (Docket Entry No. 26 at 4) (citing Docket Entry No. 23 at ¶¶ 11, 14). Neither that statement, nor the cited portions of the complaint, alleges facts showing either modification or breach. The response then cites 20 paragraphs of the complaint, (*id.*) (citing Docket Entry No. 23 at ¶¶ 13–33), but it does not explain how the allegations in those paragraphs demonstrate the "meeting of the minds supported by consideration" required to modify a contract under Texas law. *See Calianno v. Distinctive Brands, Inc.*, No. 4:12-CV-435, 2013 WL

10

12140296, at *4 (S.D. Tex. Feb. 20, 2013) (quoting *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 701–02 (Tex. App.—Dallas, 2008)). The complaint instead alleges that Haroon agreed to do no "more than that which [s]he is already bound to do under an existing contract," meaning no modification occurred. *See id.*

In sum, Haroon alleges that Nguyen made representations about her commission and "CRM technology" before and after she began working at Erbe, but she has not alleged the other elements required to infer that those representations were incorporated into a valid and enforceable contract. There are no allegations supporting the formation of an oral contract. The only contract identified in a sufficiently specific manner is the offer letter and employment agreement, which does not leave open any material terms. Haroon has not alleged any action taken by Erbe that breached the written contract. The breach of contract claim is dismissed, with prejudice, because further amendment would be futile.

### B. The Fraudulent Inducement Claim

The elements of fraudulent inducement are: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Id.* "Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). "That is, when a party has not incurred a contractual obligation, it has not been induced to do anything." *Id.* A complaint alleging fraudulent inducement must meet Rule 9(b)'s heightened pleading standards. *See Lone Star Ladies Inv. Club*, 238 F.3d at 368.

The court's conclusion that Haroon's breach of contract claim must be dismissed because she failed to allege an enforceable contract that included Nguyen's representations is not fatal to her fraudulent inducement claim. Haroon's allegations establish, and Erbe does not contest, that Haroon and Erbe entered into a contractually binding employment agreement. Haroon has sufficiently alleged that she "incurred a contractual obligation" by accepting a position at Erbe. *See Haase*, 62 S.W.3d at 798.

Haroon's fraudulent inducement claim appears to be based on allegations that Nguyen made representations to her in December 2022 that he knew were false and that were intended to induce her to accept a job with Erbe. (Docket Entry No. 23 at ¶¶ 10–16, 42–47).[3] The alleged misrepresentations were that Haroon would receive higher commission rates than those presented in the written contract, (*id.* at ¶¶ 10, 13, 14); Nguyen could modify the contract, even retroactively, (*id.* at ¶ 14); and Haroon would have "complete transparency via CRM technology as to how or whether she was paid consistently with the[] terms," (*id.* at ¶ 12). Haroon alleges that she relied on these misrepresentations when she accepted an offer of employment from Erbe, causing her financial loss. (*Id.* at ¶¶ 16, 17, 46, 47).

Erbe argues that Haroon's fraudulent inducement claim is insufficiently pleaded because the allegedly fraudulent statements were made before Haroon signed the contract and agreed to the written terms, so the oral representations were merged into the written contract. (Docket Entry No. 24 at 7). As Erbe states, under Texas law, "any prior or contemporaneous oral agreements

---

[3] When arguing against the dismissal of the fraudulent inducement claim, Haroon's response asserts that Haroon "plainly alleged that the representations occurred after the execution of the contract as well." (Docket Entry No. 26 at 7) (citing Docket Entry No. 23 at ¶¶ 17–34). A representation made after the execution of a contract cannot induce a party to enter into the contract. Accordingly, Haroon's fraudulent inducement claim must be based on the alleged misrepresentations made before she accepted Erbe's employment offer.

between the parties are presumed to be merged into the written agreement, even without an express merger clause." *Allamon v. Acuity Specialty Prods., Inc.*, 877 F. Supp. 2d 498, 508 (E.D. Tex. 2012), *aff'd,* 534 F. App'x 248 (5th Cir. 2013). That proposition is related the parol-evidence rule, *see id.*, which—as detailed in the previous section—is one of the reasons that Haroon's breach of contract claim fails. However, Texas law also provides that "parties challenging contracts as fraudulently induced may rely on evidence of oral promises or agreements to support their claims." *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 452 (5th Cir. 2000). A fraudulent inducement claim requires a plaintiff to point to misrepresentations made before the execution of a contract; otherwise, there can be no reliance. Nguyen's representations may have been subsumed into the written contract, but that does not mean they cannot serve as the basis for a fraudulent inducement claim. *See id.*

Erbe also argues that Haroon has not pleaded that Erbe made promises knowing that it did not intend to perform as promised. (Docket Entry No. 24 at 7–8); *see JT Brother Constr., LLC v. Tex. Pride Trailers, LLC*, No. CV H-21-4205, 2022 WL 800183, at *4 (S.D. Tex. Mar. 16, 2022) (distinguishing between cases in which "a party was induced into signing a contract by a promise that the promisor had no intention of keeping at the time he made the promise" and those in which "a party has made a promise with an existent intent to fulfill its terms and who then changes his mind and refuses to perform" (quoting reference omitted)). According to Erbe, the amended complaint at best alleges a failure to fully perform a contract because Haroon was paid less than she had been promised. "[P]artial performance can negate an intent not to keep a promise at the time it was made." *Allamon*, 877 F. Supp. 2d at 525 (alteration adopted) (quoting reference omitted).

Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "Although Rule 9(b) allows a plaintiff to plead intent to deceive or defraud generally, a mere conclusory statement that the defendant had the required intent is insufficient; the plaintiff must set forth specific facts that raise an inference of fraudulent intent, for example, facts that show the defendant's motive." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 805 (S.D. Tex. 2007).

The complaint alleges that Nguyen had experience working at Erbe and exposure to the CRM transparency modules before his conversation with Haroon in December 2022. (Docket Entry No. 23 at ¶¶ 30–31). Nguyen also allegedly never made any effort to enforce his verbal promises about compensation and transparency, even though Erbe was financially able to pay the promised compensation. (*Id.* at ¶¶ 34, 44). Haroon alleges that in May 2024, upon learning about the discrepancies in her compensation, she requested information from Erbe but was "informed that she could not receive it based on her having legal counsel." (*Id.* at ¶ 29). Erbe allegedly rejected similar requests from other employees. (*Id.*). Nguyen also allegedly promised to follow up with senior management but never did. (*Id.* at ¶ 45). Haroon alleges that, based on her industry experience, she recognized Erbe's actions as a "'bate [*sic*] and switch' ploy sometimes utilized to recruit top candidates but deprive [them] of legitimate negotiating leverage." (*Id.* at ¶ 43). These allegations, particularly as to Erbe's financial motive and efforts to conceal, are sufficient at this stage of the litigation to plead fraudulent intent. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d at 805; *United States v. Hall*, 756 F. App'x 439, 441–42 (5th Cir. 2019) (per curiam) (efforts to conceal can support an inference of fraudulent intent).

Erbe's argument that Haroon has alleged partial performance as opposed to a failure to perform is based on Haroon's allegation that she was paid part of what was promised. Paying a lower commission rate than promised is not partial performance, but failure to perform as promised. Haroon's fraudulent inducement claim does not rely on her allegations of breach of contract, but on alleged misrepresentations made with the intent to recruit her to work at Erbe.

Haroon has sufficiently alleged a fraudulent inducement claim under Rule 9(b). Erbe's motion to dismiss the fraudulent inducement claim is denied.

### C. The Promissory Estoppel Claim

To plead a promissory estoppel claim under Texas law, a plaintiff must allege: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

Erbe argues that Haroon's promissory estoppel claim must be dismissed because there is a legally valid employment contract between the parties. (Docket Entry No. 24 at 9). "[A] contract comprising the disputed promise precludes recovery under promissory estoppel." *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990). "Promissory estoppel cannot apply to promises covered by a valid contract between the parties, but it does apply to promises made outside the contract." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CV H-16-549, 2017 WL 1231026, at *3 (S.D. Tex. Apr. 4, 2017) (quoting reference omitted).

The complaint alleges several promises related to compensation and pay transparency that were made before the written contract was signed and on which Haroon reasonably relied when she left her prior job and accepted a job with Erbe. (Docket Entry No. 23 at ¶¶ 10–16, 55). The complaint also alleges several promises related to compensation made after Haroon started work, including that Nguyen would adjust her commission rates to match the previously promised rates.

15

(*Id.* at ¶¶ 20, 32). Haroon claims that she relied on those representations when she decided to continue working for Erbe instead of switching jobs, which caused her financial harm. (*Id.* at ¶¶ 32, 55–56). As detailed previously, Nguyen's representations do not form part of a valid and enforceable contract, and the written employment contract does not discuss pay transparency. Haroon alleges that she had no choice but to rely on Nguyen's representations because she was denied information for more than a year that would allow her to verify her actual commission rates. (*Id.* at ¶ 32).

These allegations are sufficient to plead a promissory estoppel claim based on promises made outside the offer letter and employment contract. This court's holdings on the breach of contract and fraudulent inducement claims bolster this conclusion, as Haroon's alleged damages stem not from a breach of the employment contract but rather from promises made separate from that contract.

Erbe's motion to dismiss the promissory estoppel claim is denied.

## IV.     Erbe's Rule 12(f) Request

Erbe's motion to dismiss argues in a footnote that the complaint includes "several scandalous, irrelevant and, frankly, gratuitous allegations regarding the alleged work conditions at Erbe." (Docket Entry No. 24 at 1 n.1). The court agrees that the complaint contains significant "redundant, immaterial, impertinent, or scandalous matter" subject to being stricken under Rule 12(f). *See* FED. R. CIV. P. 12(f). Erbe's motion for leave to file a Rule 12(f) motion is granted.

## V.      Conclusion

Haroon's breach of contract claim is dismissed, with prejudice because further amendment would be futile. Erbe's motion to dismiss, (Docket Entry No. 24), is otherwise denied. The fraudulent inducement and promissory estoppel claims may proceed. Erbe may move to strike

portions of Haroon's complaint that are "redundant, immaterial, impertinent, or scandalous," as permitted by Federal Rule of Civil Procedure 12(f).

SIGNED on April 22, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge